**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Larry Ientile,** | ) | **CASE NO. 1:06 CV 1929** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **United States Steel Corporation, et al.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

### Introduction

This matter is before the Court upon defendant United States Steel Corporation's Motion for Summary Judgment (Doc. 17).  This case alleges a failure to hire based on age discrimination.  For the following reasons, the motion is GRANTED.

### Facts

Plaintiff, Larry Ientile, filed his Complaint against defendants, United States Steel Corporation (hereafter, defendant or USS) and John Does 1-X.  The Does have not been identified.  Plaintiff was born on June, 15, 1952 and was 52 years old at the time of the alleged adverse employment action herein.  (pltf. depo. 7)

1

Plaintiff began working for USS in the Lorain plant in 1970.  The Lorain plant had two separate areas- the Pipe Mill and the Bar Mill/hot end.  In 1999, the Bar Mill was purchased by Republic Technologies International, LLC.  USS retained the Pipe Mill in Lorain which is operated as Lorain Tubular.  Plaintiff worked for the Bar Mill in 1999 and, thus, became an employee of Republic.  Plaintiff retired from Republic in 1999. Plaintiff began working for the Lorain County Engineer's garage department in November 2004.  At Lorain County, plaintiff operates forklifts, dump trucks and snow plows. (Compl. ¶ 8; pltf. depo. 18-19, 22, 28-29, 33-34; Jinnyn Tata decl.)

USS's Lorain Tubular Operations is a seamless tubular mill located in Lorain, Ohio that produces large diameter pipe.  In 2005, Lorain Tubular Management determined that there was a need to hire new employees for the entry-level production position called Utility Technician, which position does not require employees to have a skilled trade or prior steel mill experience.  The Utility Technician primarily performs production functions but may also perform some routine maintenance functions.  In February 2005, USS contracted with The Right Thing, Inc. (RTi), a recruitment process-outsourcing firm, to recruit and screen applicants for the Utility Technician position at Lorain Tubular.  USS relied on RTi's screening process to identify the best candidates from the pool of over 1400 applicants. For a number of years, USS had outsourced the recruitment and applicant screening process of production employees to RTi.  (Tata decl.)  RTi does not focus on any one industry in providing its staffing solutions to its clients.  (Bradley Stevens depo. 12)

Plaintiff applied for the Utility Technician position and indicated on his prescreen application that he had previously been a USS employee.  (Tata decl.)  Plaintiff applied for

the Utility Technician position because he did not enjoy his work with Lorain County and sought to be back in the steel plant where he felt comfortable. (pltf. depo. 51-52)

The employment advertisement for the Utility Technician position stated the "essential duties and responsibilities":

> Operates equipment and performs tasks that support operations of the various producing units and works with materials and equipment to handle, transport, and process product and materials. Directs the flow of material to and from producing units and inspects materials. Operate equipment associated with producing units such as roll grinders, etc. and operates material handling equipment such as tractors, trucks, heavy equipment, dozers, loaders, boom trucks, mobile cranes (various sizes and types), etc. Inspects and performs maintenance on all associated equipment.

(Tata decl.; Ex. 4)

The employment advertisement for the Utility Technician position identified the "Minimum Qualifications Required" as:

- Able to work a variety of shifts and overtime as necessary

- Demonstrated a stable work history with an excellent attendance record

- Quality focus and team orientated [sic]

- The starting salary for this position is $15.45 per hour with potential for $2.00 per hour incentive pay

- Written testing and drug testing are required

(Tata decl.; Ex. 4)

USS and RTi established a screening process for all Lorain Tubular applicants which required successful completion of an online application data sheet (the prescreen), a written test, a scored telephone interview, a background check and an informational session at Lorain Tubular. RTi was responsible for conducting the prescreen, written test and telephone interview portions of the application process. RTi informed USS of the names of applicants

3

that indicated prior USS employment on the prescreen. USS then verified through electronic employment records that the applicants had not been discharged for cause from USS. USS would then instruct RTi to remove the applicants eligible for rehire from the hold status and schedule them for written testing. Only applicants who successfully completed the prescreen, written test and telephone interview were qualified to be referred to USS for employment consideration. (Tata decl.)

Bradley Stevens, employed by RTti as a Relationship Manager, states that under its contract with USS, RTi was responsible for sending acknowledgements as well as status correspondence and decline correspondence to applicants and, thus, it was responsible for notifying applicants who were eliminated following the prescreen and other stages of the application process. RTi used generic template emails or letters to correspond with applicants without outlining the specific reason for disqualification. (Stevens decl.)

RTi organized the testing sessions which included proctoring and scoring the written test which consisted of four sections: reading; arithmetic; inspection and measurement; and process monitoring and problem solving. Applicants had to meet a cutoff score for each section to receive a passing grade. Applicants who failed the written test were notified by RTi that they were no longer being considered. (Stevens decl.)

At the time applicants took the written test, they also completed a USS employment application and authorized a background investigation. (*Id.*)

RTi evaluated the applications of those passing the written test and slotted them into categories of A, B, or C, which determined the order for scheduling telephone interviews (with those in the A category scheduled first). Applicants who passed the written test were

contacted by RTi and told to schedule a telephone interview.  (*Id.*)

RTi interviewers were not provided information about the candidates.  A "behaviorally based" telephone interview was conducted.  (*Id.*)  "Behaviorally based" refers to the interviewer's inquiry into different behaviors that USS wanted assessed. (Stevens depo. 59) RTi created the Lorain Pipes Mill Screening Interview Guide to aid interviewers in conducting the interviews.  The candidate was asked to tell the interviewer about a time when he had to deal with a specific issue or situation, the specific actions taken to handle the situation and the result. The Interview Guide contained questions on teamwork, safety and motivation.  Candidates were given a score of 1 or 2 (low), 3 (medium), 4 or 5 (high) for each of the three subjects.  Candidates' scores were averaged to determine the overall score, with only those receiving a 3.0 or greater on the telephone interview being moved forward in the application process.  Communication skills were also rated pass or fail.  (Stevens decl.)

RTi interviewers received in-house training and certification prior to conducting and scoring telephone interviews. (*Id.*)  RTi wrote the telephone interview guide as well as the questions to be asked.  (Tata depo. 153)

Background investigations were conducted by a third party for those candidates who received a passing score on the telephone interview, with the results sent to Jinnyn Tata and RTi.  Following initiation of the background investigation, RTi identified a group of recommended candidates for USS to consider for employment, and USS then took over the application process. (*Id.*)  The successful candidates were then invited to Lorain Tubular for an information session and candidates who passed a drug test were offered employment. (Tata decl.)

5

Plaintiff applied for the Utility Technician position in March 2005, at age 52. After indicating on the prescreen that he was a former USS employee, RTi forwarded his name to Jinnyn Tata (Department Manager-Personnel and Labor Relations at USS's Lorain Tubular Operations) for review. At this point, Tata first became aware that plaintiff was an applicant for the position. Tata subsequently informed RTi that plaintiff was eligible for rehire. Plaintiff also indicated on his application that he is a direct relative of Joseph Ientile, a bargaining unit employee at Lorain Tubular. (Tata decl.)

Plaintiff passed the written test, but failed the telephone interview because his score was less than 3.0. (Stevens decl.) Plaintiff received a score of 2.75. (Stevens depo. 78) He also received a failing score on the communications section. As a result, he was not referred to USS as a candidate for employment. The RTi interviewer was Rod Fellows, 58 years old. (Stevens decl.)

Plaintiff avers that the telephone interview lasted only about ten minutes. Plaintiff felt that the interviewer was not paying attention to his responses and would not let plaintiff finish his answers. When plaintiff gave his answers, he heard the interviewer typing in the responses which was distracting to plaintiff. The interviewer did not ask plaintiff about his qualifications, skills, or experience, and most of the questions were "geared towards safety." Plaintiff told the interviewer that he had 32 years of steel mill experience. (pltf. aff.)

Lorain Tubular hired 74 of the applicants that RTi referred as candidates for the Utility Technician position, 29 of whom were over age 40 at the time of hire. (Tata decl.)

Plaintiff thereafter filed an EEOC charge alleging age discrimination and, subsequently, the Complaint herein. Plaintiff's Complaint sets forth two claims for relief.

6

Count One alleges a violation of the Age Discrimination in Employment Act (ADEA).  Count Two alleges a violation of Ohio's public policy prohibiting age discrimination.

This matter is now before the Court upon defendant USS's Motion for Summary Judgment.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its resolution will affect the outcome of the lawsuit."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party.  Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of [his] pleadings, but [his response], by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue for trial.  If he does not respond, summary judgment, if appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985). However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

**Discussion**

To establish a prima facie claim of age discrimination under the ADEA, a plaintiff must show that: (1) he was at least 40 years old at the time of the alleged discrimination, (2) he was subjected to an adverse employment action, (3) he was otherwise qualified for the position and (4) he was replaced by a younger worker. *Tuttle v. Metropolitan Government of Nashville*,
474 F.3d 307 (6th Cir. 2007) (citing *Rowan v. Lockheed Martin Energy Sys., Inc*., 360 F.3d 544, 547 (6th Cir.2004) ) The fourth element may be satisfied "by showing that similarly

8

situated non-protected employees were treated more favorably." *Id.* (citing *Coomer v. Bethesda Hosp.*, Inc., 370 F.3d 499, 511 (6th Cir.2004) ) In order to state a prima facie case of age discrimination in failure to hire, a plaintiff must show that: (1) he was a member of a protected class, (2) he applied and was qualified for the position in question, (3) he was considered and denied the position and (4) he was rejected in favor of a substantially younger person with similar qualifications.     *Pucci v. Basf Corp.*, 55 Fed.Appx. 243, (6th Cir. 2002)

If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a non-discriminatory reason for its adverse employment action. If the defendant then articulates such a reason, the plaintiff must demonstrate by a preponderance of the evidence that the defendant's proffered reason was a pretext for age discrimination. *Tuttle, supra.*

Defendant argues that plaintiff cannot establish a prima facie case.  For the following reasons, this Court agrees.

Defendant first asserts that it did not make the decision to not hire plaintiff, and did not even consider plaintiff's application for employment.  As discussed above, defendant outsourced the recruitment and application screening process for the Utility Technician position to RTi which determined that plaintiff did not receive a passing score on the telephone interview portion of the screening process.  Consequently, RTi did not refer plaintiff to Lorain Tubular for employment consideration.  As a result, plaintiff did not advance to the portions of the application process in which Lorain Tubular was directly involved (i.e., the informational session, background investigation, drug testing and post-offer physical).  Jinnyn Tata states that USS did not become aware that plaintiff was no longer a

9

candidate for employment until Tata received a copy of the EEOC discrimination charge filed by plaintiff. (Tata decl.)

Plaintiff contends that RTi was "merely the arm of USS" and that USS controlled the hiring process and was the ultimate decision maker. (Doc. 23 at 13). In particular, plaintiff points to the following evidence:

- Jinnyn Tata and Bradley Stephens testified that USS and RTi collaborated to create the online prescreen application and newspaper advertisement for the position.

- After an applicant indicated in his application that he formerly worked for USS, his name was put on a hold status and USS was responsible for verifying that the individual was eligible for re-hire.

- USS and RTi collaborated to decide to group applicants in categories of A, B and C following the written test.

- USS and RTi collaborated to create the behaviorally based telephone interview.

- Following initiation of the background investigation, RTi identified a group of recommended candidates for USS to consider for employment, and USS then took over the application process. The successful candidates were then invited to Lorain Tubular for an information session and candidates who passed a drug test were offered employment.

Plaintiff also asserts that RTi lacked knowledge of the steel mill. Plaintiff points out that Stephens testified that RTi's largest sector is pharmaceutical and that less that 5% of its clientele involves industrial or manufacturing. (Stephens depo. 12-13) Stephens additionally testified that his only knowledge of the position and the steel mill came from a video about the Lorain facility provided by USS and the collective bargaining agreement's description of the position. (*Id.* 15-16, 19-20) Nor did Rod Fellows know anything about what Utility Technicians would be doing or what type of skills or qualifications USS was looking for. (Fellows depo. 9-10)

Defendant does not deny that RTi and USS collaborated to create the online application, the employment advertisement and telephone interview guide, and that USS made the final decision as to who was hired.  Defendant asserts, however, that USS did not make the decision to deny plaintiff employment.  Rather, RTi, with whom USS had contracted to provide screening services, did not forward plaintiff's application materials to USS for consideration because he failed to pass the telephone interview.  For the following reasons, this Court agrees.

USS and RTi had a written agreement whereby RTi would recruit and screen applicants for the Utility Technician position.  (Tata decl. Ex. 3)   While USS and RTi together established the screening process and USS determined whether former USS employees were eligible for re-hire, RTi was responsible for conducting the prescreen, written test and telephone interview portions of the application process.  Only applicants successfully passing these portions were forwarded to USS for employment consideration.  Because plaintiff failed the telephone interview, USS did not consider plaintiff's employment application and did not become aware that he was no longer a candidate for employment until receipt of the EEOC charge.  (Tata decl.)

Plaintiff refers to RTi as USS's "agent," and contends that USS controlled the hiring process.  The Court agrees with defendant that there is no evidence of an agency relationship herein.

To establish an agency relationship under Ohio law, it must be shown that a fiduciary relation results from 1) the manifestation of consent by one person to another that the other shall 2) act on his behalf and 3) subject to his control and 4) consent by the other so to act.

11

*Pavlovich v. National City Bank*, 435 F.3d 560 (6th Cir. 2006) (citations omitted).

Clearly, RTi was a separate and distinct entity from USS. The parties entered into a contract by which RTi would provide hourly hiring services to USS to support the Utility Technician position and there is no evidence that USS had control over RTi's employees who conducted the telephone interviews. Rather, RTi employees received in-house training and certification prior to conducting and scoring the telephone interviews, and performed all the telephone interviews. There is no evidence that USS played any part in conducting the telephone interviews or determining how interviewers graded an applicant's answers.

Moreover, the fact that RTi had little knowledge of the steel mill only reinforces the evidence (discussed below) that the individuals hired for the position did not need to have steel mill experience, industrial experience, or maintenance skills.

Accordingly, plaintiff has not demonstrated that defendant made the decision to give plaintiff a failing score on the telephone interview, thereby preventing plaintiff from advancing in the interview process. For this reason, defendant cannot be held liable under the ADEA and summary judgment is warranted.

Second, defendant asserts that plaintiff was not qualified for the Utility Technician position. For the following reasons, this Court agrees.

As discussed above, plaintiff was required to pass the telephone interview in order to be considered for employment. He did not. Plaintiff asserts that he had all the production and maintenance skills referenced in the CBA job description of the Utility Technician position. Plaintiff submits the affidavit of Dominic Cataldo, a retired employee of USS and union chairman during the time the CBA was modified to include the Utility Technician position.

He avers, "Because of his experience, training, and skills acquired over his many years of production and maintenance service, there is no doubt that [plaintiff] was and is qualified for the Utility Technician position."  (Cataldo aff.)  Plaintiff also submits the affidavit of Don Golden, the current union president who avers, "Because of his training, experience, and skill level, [plaintiff] could/can perform the Utility Technician position without any difficulty."  (Golden aff.)  Finally, plaintiff's own affidavit attests to his steel mill experience.  Plaintiff also states that he met the minimum qualifications set forth in the advertisement for the position.

Tata, however, avers that the Utility Technician position is an entry-level position and does not require employees to have a skilled trade or prior steel mill experience.  Applicants were not required to have industrial experience or maintenance skills.  (Tata decl.)  Defendant states that as an entry level position, new employees were required to complete a formal training program at Lorain Tubular, regardless of prior work experience.

Thus, merely because plaintiff had production and maintenance skills, defendant required him to pass the telephone interview in order to be considered for employment.  Because he did not, he was not qualified for the position.

Plaintiff contends that there are "inherent problems with the telephone interview in that it is highly subjective."  (Doc. 23 at 15)   Assuming *arguendo* that an agency relationship existed between USS and RTi, this amounts to second guessing of RTi's business judgment which this Court is prohibited from doing.  *See Quinn-Hunt v. Bennett Enterprises, Inc.*, 211 Fed.Appx. 452 (6th Cir. 2006) (citing *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Svs.*, 165 F.3d 1321, 1330 (10th Cir.1999) ("Our role is to prevent unlawful

13

hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments.")   Nonetheless, the behaviorally based interview by its nature required a level of subjectivity as to how the interviewer scored the applicant's answers.

Plaintiff also points out that one of plaintiff's telephone interview sheets (Interview Guide) provided by defendant indicates that plaintiff passed the communication portion of the interview while one indicates that plaintiff failed the communication portion.  (pltf. depo. Exs. 10 and 11) Plaintiff asserts that it is clear that the document was changed at one point and that other portions of it may have been altered as well.  Both Interview Guides, however, show that plaintiff received an overall score of 2.75- a failing score.  Moreover, as Stevens explained, the rating of pass or fail as to a candidate's communications skills related only to the communication section and not the entire telephone interview, and it was only the overall numeric score which determined whether a candidate passed the telephone interview. (Stevens decl.)

Because plaintiff failed the telephone interview, he was not qualified for the position. Accordingly, even assuming defendant made the decision to not hire plaintiff, plaintiff does not establish a prima facie case.

Defendant has asserted a legitimate, non-discriminatory reason for not hiring plaintiff. Specifically, plaintiff's application was not forwarded to defendant for consideration by RTi because plaintiff did not receive a passing score on the telephone interview.  Plaintiff argues that this was a pretext for age discrimination.  For the following reasons, this Court disagrees.

Plaintiff questions the reliability of the telephone interview conducted by RTi.  As discussed above, USS was not involved in the telephone interview.  Regardless, plaintiff's

14

assertions are unpersuasive. For instance, plaintiff asserts that he alluded to his age when he told the RTi interviewer over the telephone that he had worked at the mill for more than 32 years. Even assuming the interviewer knew plaintiff was over 40 years old, plaintiff's assumptions that he unfairly graded plaintiff are not supported. Plaintiff also asserts that the telephone Interview Guide indicates something "not quite appropriate in plaintiff's score." (Doc. 23 at 17) Specifically, as to the question on motivation, plaintiff was asked, "Tell me about a time when you took specific action to improve yourself on the job. Have you ever received any awards or recognition for your work on the job." The interviewer recorded plaintiff's answer as, "Production equipment has to be ready as soon as possible- I am to keep this going- I was in maintenance- I have gotten certificates several times and many verbal comments of praise." (Stevens decl. Ex.) Plaintiff received a low score of 2 for this question. Plaintiff asserts that because he told the interviewer that he had received certificates and verbal praise, objectively he deserved at least a medium score. The interviewer, however, noted "never answered the question." Presumably, this relates to the fact that plaintiff was asked to "Tell me about a time when you took specific action to improve yourself on the job." Plaintiff does not appear to have responded to this. Again, assuming an agency relationship existed between USS and RTi, plaintiff is merely questioning the interviewer's business judgment which in insufficient to give rise to evidence of pretext. *See Burke-Johnson v. Department of Veterans Affairs*, 211 Fed.Appx. 442 (6th Cir. 2006) (Plaintiff's personal opinion of his own performance is insufficient to establish pretext.); *Conley v. U.S. Bank Nat. Ass'n,* 211 Fed.Appx. 402 (6th Cir. 2006) (Even if the manager's assessment of plaintiff was erroneous or wrong, it was not illegal, because there is insufficient evidence to link the

15

assessment to plaintiff's age. *citing Evers v. Alliant Techsys., Inc.*, 241 F.3d 948, 959 (8th Cir.2001) (holding that it is not unlawful for an employer to make erroneous evaluations); *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1285 (9th Cir.2000) (holding that it is not unlawful for an employer to make unwise business judgments, use a faulty evaluation system, or do a poor job of selecting employees).

Plaintiff additionally asserts that he was denied employment over much younger individuals who had no relevant skills or qualifications. In particular, plaintiff contends that while he had extensive steel mill experience, those hired had no manufacturing background. For example, the prior employment of some of the younger individuals hired consisted of gas station store manager, grocery clerk, retail sales associate, bus boy and trim carpenter. As discussed above, however, the evidence shows that the Utility Technician position is an entry-level position which does not require employees to have a skilled trade or prior steel mill experience.

Finally, plaintiff acknowledges that of the 74 individuals hired, 29 were over age 40, including three over age 50. As defendant points out, this amounts to almost 40% of those hired were over age 40. On this basis, there can be no inference of age discrimination.

Accordingly, plaintiff fails to establish pretext.

For these reasons, plaintiff's ADEA claim fails. Because the age discrimination claim is not viable, plaintiff's public policy claim fails as well.

**Conclusion**

For the foregoing reasons, defendant United States Steel Corporation's Motion for

16

Summary Judgment is granted.

>IT IS SO ORDERED.


                                      /s/ Patricia A. Gaughan
                                      PATRICIA A. GAUGHAN
                                      United States District Judge


Dated: 8/16/07